**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**WILLIAM FIGUEROA,**

**Petitioner,**

**20cv3013 (JGK)**

**- against -**

**ORDER**

**KEYSER,**

**Respondent.**

---

**JOHN G. KOELTL, District Judge:**

The Court has received the attached two filings from the petitioner. The Government should respond by June 24, 2020. The petitioner may reply by July 3, 2020. It is not helpful for the petitioner to file additional filings outside the schedule determined by the Court because it simply delays the disposition of the numerous filings that the petitioner has already made. Chambers will mail a copy of this order to the petitioner.

**SO ORDERED.**

**Dated: New York, New York**
**June 10, 2020**

**/s/ John G. Koeltl**
**John G. Koeltl**
**United States District Judge**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
WILLIAM FIGUEROA,

Petitioner,

-against-

2020 CV 3013 (JGK)

WILLIAM F. KEYSER,

Respondent.
-------------------------------------------------------------X

TO: **HONORABLE JUDGE JOHN G. KOELTL, U.S.D.J.**:

I, herein respectfully move, in the foregoing supplemental petition, in accord with title 28 U.S.C. §1746, duly sworn under the penalty of perjury and declarer's, on this 26 day of May, 2020 I submit the following to be true, accurate and correct, sign and dated by my hand.

1. I am a prisoner in the custody of the Superintendent of Sullivan Correctional Facility, P.O. 116, Fallsburg, New York 12733, in which petitioner is seeking permission for leave to file a supplemental fact connect it to the original pleading, pursuant to Federal Rule of Civil procedure 15(d). Reconsideration should be granted in light of the recent decision in Brooks v. Wolcott, 2020 WL 2553030 at *5 (WDNY May 20, 2020). But the fact is that the Court must not allow Petitioner[s] to be endangered for one more day. We are living in novel and dangerous times. **"Every day-indeed, every minute- may count, particularly for someone like Petitioner[s] who are at high-risk from COVID-19 and currently living in a facility with a documented outbreak and limited means of protection and social distancing."** In that undetected case are present at Sullivan Correctional Facility; ("The nature of prisons-crowded, and cells that are elbow to elbow open view bars as doors puts inmates inside a facility with an outbreak at heightened risk under the CDC's guidelines from contracting COVID-19"). See: Jones v. Wolf, 2020 WL

1643857, at *3 (W.D.N.Y. Apr. 2, 2020). COVID-19 has been shown to spread in a matter of a single day and the National Psoriasis Foundation Medical Board has warned the individual like {petitioner] with severe forms pf psoriasis requiring immunosuppressive therapies may be at greater risk of infection. See United States v. Robison, 2020 WL 198287, at *2 (N.D. Cal. 2020).

- On April 2, 2020 Approx. 1:09 p.m. I filed a grievance requesting that all Mobility Guides be issued face mask and gloves as a preventive measure to not spread the highly contagious virus COVID-19. Please see supporting Exhibit (A).

- On April 4, 2020 at approx. 12:50 p.m. I was wearing a handkerchief cover mask as the CDC recommend however, I was told to remove as well, at this on the about date Sgt. Wilson ordered C.O. Powell Badge # 43240 to remove my mask from me. I did as directed and was then issued a contraband receipt by C.O. Powell, for my face mask. Please see supporting Exhibit (B). See: Engelund v. Doll, 2020WL 1974389 (M.D. Penn. 2020) (nothing that inmates required to wear mask").

- In the present case address whatever inmates with limited to protect themselves from the threat of this serious and deadly virus due to their incarceration in Sullivan Correctional Facility, ("Prison") are being adequately protected. If they are not the Court must provide some remedy, as "[p]risoners retain the essence of human dignity inherent in all person" and failing to protect them from serious harm "is incompatible with the concept of human dignity and has no place in civilized society". Brown v. Plata, 563 U.S. 493, 510-11 (2011).

- The Sullivan Correctional Facility, is supposed to enforce inmates to follow social distancing, but their attempt to do as limiting just in house recreation as failed. Because all they did was limit us in house recreation but not tell us to follow social distancing and at times tell us a regular DOCCS rule no more than three to a group. However, they did not train the C.O. Staff, on how to instruct inmates to maintain six feet of distance in the common spaces however, it's impossible to keep inmates distance because there are 32 inmates in one side and all together there are 64 inmates and even more, when out during outside recreation and hallway movement during movement.

- Thus; inmates cell however, are elbow to elbow from each other which a cough or a sneeze can travel on to the next cell. Sullivan Correctional Facility, is has not enforce inmates to wear mask during in cell and has failed to come up with a plan to control this way of spreading the deathly virus from inmate to inmate.

- Moreover, phone are not being clean after ever use is as needed basis however, many inmates are not following DOCCS rule because it's not monitory to do so because inmates are

wearing mask outside their cells but not gloves in which the touch the phone and cough and their ears and sweat still gets on the phone which what good does it do to where a mask while on the phone to protect yourself. Inmates are not six feet of distance from each other and thus: can follow the CDC's "Social Distancing guidelines as recommend to protect others from asymptomatic transmission. Brooks v. Wolcott, 2020 WL 2553030 at *1 (WDNY May 20, 2020). As well as their warnings about the increased threat the virus poses to the medically vulnerable and people living in congregate environments such as is prison Sullivan Correctional Facility.

- Moreover, Sullivan Correctional Facility, has enforce inmates to eat in their cells however, inmates have to come out their cells 32 at a time lining up back to back to each other and touching trays and speaking and touching each other and passing unwanted food to each other and then going back to their cells to eat then having to come out to dispose of the trays and again inmates are lining up back to back touching each other and passing un-wanted food items from their trays and C.O. staff is ordering it to stop or to stay six feet apart because the prison is running on an orderly scheduled which is no difference from it running lunch and dinner in a regularly way just that inmates eat in their cells. However, it puts inmates at a higher risk in that inmates take that time to pass things and touch each other in saying hi and bye with no gloves or "PPE" gear.

- Furthermore, JPay, is submitting free things however, a life is not given free nor has a price to it, nor can it bring nor give back life or a life of a love one nor can it protect me from this deathly COVID-19 virus.

- Thus; many of the infected were Sullivan Correctional Facility, "Kitchen workers" preparing the meals who were many of the inmates who tested positive and are showing COVID-19 symptoms which is one of the housing units that were placed on lock down "**B-North**". See: Cameron v. Bouchard, 2020WL 2569868 at *11 (E.D. Mich 2020). Common surface and items that are touched frequently are not cleaned regularly and, in some cases, at all.

- Petitioner has shown that Sullivan Correctional Facility, is unable or unwilling to address this serious problem avoid the "above" that inmate due to potential exposure to COVID-19 and the spread. Carranza v. Reams, 2020 WL 2320174, at *10 (C. Colo, May 11, 2020)(finding high-risk inmates likely to succeed under Eight Amendment deliberate indifference standard when defendant knew high-risk inmates were vulnerable to COVID-19 but did not order medical staff to identify vulnerable inmates and mitigation efforts with regard to high-risk inmates were not reasonable).

DISCUSSION

3. This Court must not accepted respondent's argument, due to the facts petitioner demonstrates COVID-19 pandemic, present a real and substantial risk to the health and safety of the inmate's in Sullivan Correctional Facility. Thus; in the interest of health, life and due process liberty interest petitioner, should be granted release in all respects. The issuance of a writ of habeas corpus; must be subjective for the purpose of the circumstances surrounding petitioner's exhaustion of the administrative process; under 28 U.S.C. §2254(a), and can be waived in light of the extraordinary threat posed – in these unique circumstances imposed by COVID-19 pandemic as it is spreading exponentially and silently from asymptomatic carriers of the virus to other. Accord McPherson v. Lamont, 2020 WL 2198279, at *5 & n.3 (D. Conn. May 6, 2020); Brooks v. Wolcott, 2020 WL 2553030 at *4 & n.5 (W.D.N.Y. May 20, 2020).

4. By its terms §2254(a), empowers the district court to achieve as single end: to terminate the petitioner's continued custody at Sullivan Correctional Facility due to the public health crisis posed by the Covid-19 pandemic violated his right under the 8th Amendment standard. Brooks v. Wolcott, 2020 WL 2553030 at *5 (W.D.N.Y. May 20, 2020) (noting that to one filed under 28 U.S.C. §2254(a), Llewellyn v. Wolcott, 2020 WL 2525770, at *4 (W.D.N.Y. May 18, 2020) (same). Section 2254 applies to "a person in custody pursuant to the judgement of a State court... on the ground that he is in custody in violation of the Constitution or laws... of the United States." **So, deliberate indifference is the whole ball game on the merits of Petitioner's "Eighth Amendment" claim.**

5. Together, the statutes and case law which the exhaustion requirement in the context of the Covid-19 pandemic, Supreme Court Justice Sonia Sotomayor; joined by Justice Ruth Bader

Ginsburg, recently indicated that an exception to the PLRA's exhaustion requirement may also arise where "a prison grievance system cannot or will not respond to an inmate's complaint." Valentine v. Collier, _ U.S. _, 2020 WL 249 7541, *1 (May 14, 2020). Justice Sotomayor suggested that when faced with "a rapidly spreading pandemic [.]" administrative remedies may be "unavailable":

> ➤ I caution that in these unprecedented circumstances, where an inmate faces an imminent risk of harm that the grievance process cannot or does not answer, the PLRA's textual exception could, open the courthouse doors where they would otherwise stay closed.

6. If, this Court note that Western District of New York which condoned conditions of confinement challenges through of writ of habeas corpus, pursuant to 28 U.S.C. §2254(a). Brooks v. Wolcott, 2020 WL 2553030 at *4. On May 20, 2020, according to the most recently report from the IGRC committee, 16 inmates tested positive for forms of COVID-19. (See: Exhibit C). We will never know who or how many incarcerated individuals are "A" symptomatic, because incarcerated individuals are not being tested for the virus or waring covering masks nor, provided there with gloves or "PPE" gear. Thus; there are four shower in each housing unit, and there are a total of 64 inmates in one house unit which use those showers without every shower being disinfected after every inmate enters and exits the shower after every shower Common surface and items that are touched frequently are not cleaned regularly and, in some cases, not at all, the showers are filthy with scum, mold, clumps of hair and noise scum and are peeling in the showers and are only being clean once a day not on a as used basis.

7. Notwithstanding the fact the even after Sullivan Correctional Facility, has taken the measures to follow the CDC's guidelines of social distancing B-North, housing inmate unit has been place on lock down and all inmates housed in that unit, have been place on quarantine in their

cells however, the virus is still spreading from inmate to inmate and staff members and 16 inmates tested positive for forms of COVID-19, the record shows that the congregate nature of the Sullivan Correctional Facility, - housing 64 inmates who share showers phones and in house recreation bathroom and sink and soap bar and toilets paper and are in the same living space- makes it an ideal environment for the spread of COVID-19, at Sullivan Correctional Facility, highly infectious virus that poses a significant risk of severe illness and death. Valentine v. Collier, __ U.S. __, 2020 WL 249 7541, at *2 (Sotomayor, J.) (noting the district court's "detailed, careful findings" which included "the 'obvious' risk of [COVID-19] to the older men in the [jail] unit").

8. There have been multiple Correction Officers that have tested positive for COVID-19 and there is no doubt that COVID-19 was introduce into this facility by DOCCS "**employees**". Many Sullivan Correctional Facility Officers work in close proximity to prisoners and each other and go home every day and come back after being around family members who are not being tested or monitor and who knows who they were around associating with and are living under the same roof as the Correctional Officers who come to work every day and who spread it to inmates here who as well are not being tested or monitor unto they show symptoms in that there is no safe way to control the spread or detect who has it and not or how to stop it from spreading and being spread in this type of environment; "the spread of COVID-19, at Sullivan Correctional Facility, of a highly infectious virus that poses a significant risk of death and illnesses". As Justice Sotomayor recently stated in relation to COVID-19 and prisons:

> ➢ It has long been said that a society's worth can be judged by taking stock of its prisons. That is all the true in the pandemic, where inmates everywhere have been rendered vulnerable and often powerless to protect themselves from harm, May we hope that our country's facilities serve as models rather than cautionary tales.

Valentine v. Collier, __ U.S.__, 2020 WL 249 7541, at *3.

9. Instead of the respondent conducting a trace of these individuals who worked around that Officer that tested positive, the respondent simply took that one individual who worked around the officer who tested positive and quarantined his known associates, and prisoners who he worked around in A-north's quarantine cells in an attempt to avoid a direct correlation of infection from DOCCS employee to prisoner, allowing many other prisoner who was exposed to this officer to be free to spread Covid-19. The actions of Sullivan Correctional Facility staff are imposing an excessive risk to the health and safety of the petitioner; that is outside the scope of reasonable care. Helling v. McKinney, 509 U.S. 25, 331-32.

10. Petitioner, has established a likelihood of success on the merits on the on their Fifth and Amendment standard, but, in fact, they have also demonstrated that their claim is likely to be successful under the more exacting Eight Amendment standards as well. To succeed in proving that conditions of confinement violates the Eight Amendment, a petitioner has shown" (1) the deprivation alleged must objective be "sufficiently serious," and (2) the "prison official must have a sufficiently culpable state of mind," such as deliberate indifferent to the prisoner's or safety. See Farmer v. Brennan, 511 U.S. 825 (1994). Covid-19 has been shown to spread in the matter of a single say would well prove deadly for Petitioner. Inmates have no access to gloves or proper M-95 masks, no ear/wear correct "PPE". Zaya v. Addicci, 2020 WL 2079121, at *8 (ED Mich. 2020). There is not protection, the facility so far have not made it possible for individuals which the CDC-identified as having vulnerabilities to take these steps.

11. Finally, the response thus; raised that every argument is similar from Sullivan Correctional Facility. However, the medical conditions are not, in which the Law, is in every (COVID-19), case raised as in a similar forma and/or the same issues. In which; all petitioners are

seeking "**Emergency Release**" due to the same (Public Health Crisis), (The COVID-19) virus. Which we are all in hardship and force to endure and face a : "deathly Monster COVID-19, at a higher risks, then those in society when and if exposed to this deathly virus COVID-19", due to the lack of "PPE" gear and crowned environment we are force to live in a prison system "DOCCS" which who`s failure to in force social distancing and take measures as recommended by the CDC and it`s guidelines has put petitioners at a very higher risk then the Public. Petitioner, respectfully submitted that this Court is recognized of the "joins the growing chorus of courts imploring the coordinate branches to take action in response to the threat COVID-19 poses to inmates who are incarcerated before it is too late.

CONCLUSION

Wherefore, it is prayed, that this Honorable Court respectfully consider the rapidly spreading (COVID-19), virus and petitioner's due process of liberty interest and grant emergency released

I, Willian Figueroa, declares under the penalties of perjury, pursuant to 28 U.S.C. §1746, that the contents of the foregoing is true, accurate, and correct, and affirm the same.

Respectfully submitted,

Willian Figueroa-91-A-2142

Cc: Mathew Keller, AAG
28 Liberty Street
New York, NY 10005

File

**EXHIBIT A**

Inmate Grievance Complaint
Sullivan Correctional Facility

Name: William Figueroa-Din #91-A-2142 Dated: April 5, 2020
Housing Unit: AS-121

DESCRIPTION OF PROBLEM:

DOCSS has failed to protect my health and safety and living requirements and ("PPE") COVID-19 specific guidelines and training and precautionary measures.

GRIEVANCE

On April 2, approx 1:05 p.m., I filed a grievance requesting that all mobility guides be issued face mask and gloves as a preventive measure to not spread or catch COVID-19. To date, I have not received a response, but DOCCS employees Correctional Officers in particular, are allowed to wear face mask and gloves. In fact, two officers Ms. Green and Ms. Mackel, are ready wearing a face mask with glove.

On April 4, 2020 at approx, 12:50 p.m., I was wearing a cover mask that only covered my mouth, and noise and was told to remove, it at this time on the above dated, Sgt Wilson and Ordered C.O. Powell Badge #43240 to removed my mask from me, I tried to explain that, I am at risk of the (COVID-19), due to the asthmas, psoriasis (which is type of auto-immune disorder) which the crux of the inmate[s] constitutional rights - here, their right to liberty and possible life - are protect. However, Sgt's Wilson and C.O. Powell and staff members are wearing marks and protected facegear, I am entitled to wear one to protect myself and others. See Lewis v. Cain, 2020 WL 1614424, at *3 (2020)(Personal Protective Equipment has distributed to staff and offenders).

On April 5, 2020, the New York State Governor Andrew Cuomo, addressed that all inmate's in the city and state prison system that are incarcerated along with the Correctional Officers are now allowed to wear face mask, gloves to protect them self's and each other from the spread of the (COVID-19), while in the prison system. But, at this point, it appears speculative to opine that the various steps that DOCCS is taking to adopt these guidelines to the practices inside its Sullivan Correctional Facility will be ineffective and/or ignored.

Moreover, mean while CO staff are protected I and the rest of the inmates I am around are not in this fight against the (COVID-19) pandemic to see the CO staff and Sgt with protected gear and not me and/or other inmate's has given me mental stress along with how the prison I am in are not following the rules and the conditions that I am force to be in no one is staying six feet away, everyone is showing one after another, using the phones with no cleaning supply, lining up for food together eating together, back to back, such that all inmate's in DOCCS custody must necessary be deemed to

be at greater risk of contracting the virus. The prison here, being ran as it's a regular day is just no school, and some other programs that are closed. However, the CO's are protected not the inmate[s] and being lock in our cells during lock in hours we have no access to supply or protected equipment ("PPE"), DOCCS has also issued a (COVID-19), specific guidelines and trained all state prisons regarding screening, isolation, guarantine, housing, proper use of PPE, and precautionary measures. However, DOCCS has failed and has violated my Fifth, Eight Amendments and as CO's come in and out my family can't come visit me it's unlawful.

Grievance Signature

ACTION REQUESTED

That DOCCS issues me ("PPE") gloves and mask as needed basic follows the measures and guidelines trains all state officers and inmates regarding proper use of ("PPE") and precautionary in the light of the measures taken to stem the spread of COVID-19.

cc: Ann Marie T. Sullivan, M.D.
Medical Officer
1220 Washington Avenue Bldg 9
Albany, NY 12226

**EXHIBIT B**

FORM #2077 (REV. 11/16)

**NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION**

**CELL FRISK/CONTRABAND RECEIPT**

Original – Inmate
Copy - DSS

Sullivan **CORRECTIONAL FACILITY**

Date: 4/4/20 Frisk Start Time: Approx: 12:59pm Frisk End Time: 1:10pm

Inmate Name: Figueroa DIN: 91A2142 CELL/CUBE/ROOM: A5/21

Officer Conducting Search: B. Powell 43240 [signature]
**Print Name Legibly** **Badge #** **Signature**

| ITEMS CONFISCATED OR DAMAGED | WHERE FOUND | DISPOSITION OF ITEMS LISTED |
|---|---|---|
| home made face mask | on inmates self | Disposed of home-made face mask. |
| | | |
| | | |
| | | |
| | | |

_____ NO CONTRABAND FOUND ✓ NO PROPERTY DAMAGED DURING SEARCH

**NOTICE TO INMATE: YOU MAY WRITE TO THE DEPUTY SUPERINTENDENT FOR SECURITY WITHIN 7 DAYS OF THIS RECEIPT REGARDING THE CONFISCATION OR DISPOSITION OF THESE ITEMS.**

**NOTE: DURING THIS CELL FRISK, MY INITIALS BELOW INDICATE THAT THE CELL INTEGRITY CHECK HAS BEEN COMPLETED AS FOLLOWS:**

**FLOORS:** N/A **SINK/TOILET:** N/A

**AIR VENT:** N/A **WINDOW CHECKED/INTACT:** N/A

**CEILING:** N/A **WALLS:** N/A

**BARS:** N/A **MISC:** N/A

IN ADDITION: THE FOLLOWING ITEMS WERE CHECKED FOR COMPLIANCE:
PROPERTY LIMITS (No more than 4 bags of property): N/A
PHOTOGRAPH/PICTURE COMPLIANCE (No nudes visible from the front of cell. All photos/pictures confined in the appropriate 2' x 4' section.) N/A
INMATE ID MATCHES CURRENT APPEARANCE (Checked ID to inmate's current appearance, if the inmate was present for the search.) yes

Comments: ____________________

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. SUL-0252-20 | DATE FILED 4/1/20 |
|---|---|---|
| | FACILITY Sullivan CF | POLICY DESIGNATION I |
| INMATE GRIEVANCE PROGRAM | TITLE OF GRIEVANCE Mobility Guide PPE | CLASS CODE 50 |
| SUPERINTENDENT | SUPERINTENDENT'S SIGNATURE [signature] | DATE 4/16/20 |
| GRIEVANT Figueroa, W | DIN 91A2142 | HOUSING UNIT AS-121 |

Grievance SUL-0252-20 has been investigated by supervisory staff at this facility. Investigation reveals that the Department's single overriding focus at this is to make every reasonable effort to ensure the health and protection of all incarcerated individuals and staff relative to the COVID-19 pandemic, which is also affecting all New Yorkers. Facility Superintendents are briefing ILCs on a regular basis to ensure the sharing of information. Incarcerated individuals have been approved to wear masks within the correctional facility. However, at this time incarcerated individuals are not permitted to wear gloves. The grievant is encouraged to follow the CDC recommendation of continual hand washing and the use of hand sanitizer dispensers throughout the facility.

This grievance is accepted only to the extent above.

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. * Please state why you are appealing this decision to C.O.R.C.

That DOCSS issues inmates gloves in light of the extraordinary threat posed - in inmates unique circumstances by the Covid-19 pandemic.

[signature] GRIEVANT'S SIGNATURE — 4/16/20 DATE

GRIEVANCE CLERK'S SIGNATURE — DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

**EXHIBIT C**

 NEW
YORK
STATE

Corrections and Community Supervision

ANDREW M. CUOMO
Governor

ANTHONY J. ANNUCCI
Acting Commissioner

May 20, 2020

TO: Morrison, D 08A2086 AN-158

FROM: W. Keyser, Superintendent WK

SUBJECT: Covid-19

In response to your recent correspondence, 16 inmates have tested positive and six have been released from the infirmary as of 5/19/20. One more is waiting for the test results. You will have to FOIL your request for staff positives.

WFK:my
cc: File

Sullivan Correctional Facility, 325 Riverside Drive, P.O. Box 116, Fallsburg, NY 12733-0116 | (845) 434-2080 | www.doccs.ny.gov

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. SUL-0300-20 | DATE FILED 5/6/20 |
|---|---|---|
| | FACILITY Sullivan CF | POLICY DESIGNATION I |
| INMATE GRIEVANCE PROGRAM | TITLE OF GRIEVANCE COVID Housing Unit | CLASS CODE 50 |
| SUPERINTENDENT | SUPERINTENDENT'S SIGNATURE [signature] | DATE 5/22/20 |
| GRIEVANT Morrison, D | DIN 08A2086 | HOUSING UNIT AN-158 |

Grievance SUL-0300-20 has been investigated by supervisory staff at this facility. Investigation reveals that the Department's single overriding focus at this is to make every reasonable effort to ensure the health and protection of all incarcerated individuals and staff relative to the COVID-19 pandemic, which is also affecting all New Yorkers. Facility Superintendents are briefing ILCs on a regular basis to ensure the sharing of information. Incarcerated individuals have been approved to wear masks within the correctional facility. The grievant is encouraged to follow the CDC recommendation of continual hand washing and the use of hand sanitizer dispensers throughout the facility.

Based on the above, the grievance is denied.

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. * Please state why you are appealing this decision to C.O.R.C.

The Superintendents response Does Not remotely Address The Grievants Core Complaint Which is housing Prisoners Infected ~~Covid-19~~ and Possibly infected Prisoners with Covid-19 in A-North Housing unit For quarantining.

[signature] GRIEVANT'S SIGNATURE — 5/22/20 DATE

GRIEVANCE CLERK'S SIGNATURE — DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)

Form 2133 (02/15)

From: William Figueroa
Din: # 91A2142
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, N.Y. 12733

SULLIVAN CORRECTIONAL FACILITY NEOPOST

Legal Mail

To: Chamber of The Honorably
John G. Koeltl, U.S.D.J.
Clerk
United States District Court
Southern District of New York
U.S. Courthouse - 500 Pearl Street
New York, N.Y. 10007

SDNY

William Figueroa-91-A-2142
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733

Dated: May 27, 2020

Hon. John G. Koeltl
United States District Judge
Daniel Patrick Moynihan United States Courthouse
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Figueroa v. Keyser, 20-CV-3013 (JGK)(RWL)

Dear Judge Koeltl:

PLEASE TAKE NOTICE, herein, Petitioner William Figueroa,
respectfully states and alleges as follows:

1. Respondent answered by Opposition application to
petitioner's letter's dated May 7, 8, and 11, 2020, dated May 22,
2020, and was received by Petitioner via legal mail, dated May
26, 2020. Apparently realizing that there is abundant evidence to
support petitioner's claim, the respondent has resorted to
insisting that: (1) Petitioner fails to rebut that reason for
dismissal or, alternatively, transfer stated in respondent's
letter dated April 29 (ECF #7) and May 6, 2020 (ECF #11); and (2)
Petitioner does not dispute Judge Garaufis's conclusion (See ECF
#14, at 4 n.1) that he has failed to exhaust state judicial
remedies. Both argument are completely without merit.

2. Notwithstanding the respondent's attempts to complicate
and confuse the issue before this Court, and in consideration of
the recent decision in Elleby v. Smith, 2020 WL 2611921, at *2
(S.D.N.Y. May 22, 2020), in which petitioner's request for
release due to the Covid-19 pandemic, is not a second or
successive petition and did not require leave of Court of Appeals
to be filed and transfer the Petition to the U.S. District Court
for the Eastern District of New York pursuant to Local Civil Rule
83.3.

3. Now, as argued here, the failure to exhaust does not
divest this Court of jurisdiction over this petition. See
Valentines v. Collier, 2020 2497541, at *1 (2020). Under the
exigent circumstances condition or an unconditional writ of
habeas corpus is explicitly, and does not challenge his
conviction. Instead, he argues that his conditions of
confinement, which he says may expose him to Covid-19, is a
violation to the Eight Amendment. Petitioner quotes from a
decision of the United States Supreme Court's, where the Court
found that, in Valentine, at *2, noting the district court's
"detailed, careful findings," which included "the 'obvious' risk

of [COVID-19] to the older men in the [Jail] Unit."

4. Thus, this Honorable Court must reject the respondent's attempt's that the Petition should be dismissed, or, in the alternative, transferred to the Eastern District of New York. But even, if these state remedies were available to Petitioner to seek the relief sought, here, it is undisputed that Respondent perceived facts from which to infer substantial risk: the danger Covid-19 poses to the threat of this serious and deadly virus due to being at Sullivan Correctional Facility, and in adequately protected. And yet, Respondents would have this court offer no substantial relief to Petitioner until the pandemic erupts in our facility of which it most recently has. This Court must reject this notion. Since, "[a] remedy for unsafe conditions need not await a tragic event," it is evident that the Petitioner have standing in this matter. See Helling v. McKinney, 509 U.S. 25, 33 (1993). There is currently no vaccine for COVID-19, nor are there any known, clinically-tested therapeutic treatments.

5. More importantly, as noted above, the issuance of an unconditional writ of habeas corpus is proper and wholly warranted. See Brook v. Wolcott, 2020 WL 2553030, at *4 (W.D.N.Y. 2020). At bar, petitioner asserts that, this Court must find that Petitioner has appropriately invoked this court's jurisdiction through a 28 U.S.C. §2254 petition for writ of habeas corpus. It is respectfully submitted in support of Petitioner's motion that he be granted an evidentiary hearing on said petition. Your attention to this matter will be greatly appreciated. I look forward to Your Honor's reply. I thank the Court in advance for your time and consideration in this matter. It is so prayed.

Sincerely & Respectfully submitted

William Figueroa

cc: Matthew Keller, AAG
Assistant Attorney General
28 Liberty Street
New York, NY 10005

File see letter May 7, 2020

William Figueroa-91-A-2142
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733

Dated: May 7, 2020

Hon. John G. Koeltl
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, Ny 10007

Re: Figueroa v. Keyser, No. 20 Civ. 3013 (JGK)(RWL)

Your Honor:

I, William Figueroa, Din #91-A-2142 (pro-se) declare
pursuant to 28 U.S.C. §1746, I am the petitioner, duly sworn to
the foregoing to be true accurate, and correct, respectively
filed on 7 day of May, 2020, herein asserting the respondent's
opposition challenging petitioner habeas application of the
grounds that petitioners §2254 writ shoudl be dismiss, because he
has failed a identical petition and/or said petition should be
transferred to the Eastern District of New York because venue is
proper, among additional frivolous assertions, attempting to
poison the court's mind with the ugly sound of the charges and
elements of the criminal petitioner was duly convicted therefore.

2. However, fails to assert petitioner has served 32 year's
with a remainder of 5 left on this sentence and has alway's
maintain his innocence's and continues his collateral attack
contending such, at the very least, seven days after the
shooting, Eddie Garcia identified Manuel Rivera at a police
interview by P.O. Rosario in which stated for the second time he
had killed Maria Hernandez. (See attached). Thus; herein now
avers this Southern Honorable District Court has proper
jurisdiction, as petitioner is geographically housed/imprisoned
in Fallsburg, New York Sullivan County, Monticello, New York, of
which affects geographical jurisdiction in habeas proceedings.

3. I am the prisoner in the custody of the Superintendent of
Sullivan Correctional Facility, P.O. Box 116, Fallsburg, New York
12733 there have been 7 inmates and 13 members of the staff
reported ill from the virus.

4. The issuance of a writ of habeas corpus; must be
subjective for the purpose of the circumstances surrounding
petitioner's exhaustion of the administrative process, and this
court's jurisdiction under 28 U.S.C. §2254(a) is Southern
District of New York jurisdiction over this proceeding, in these
unique circumstances in posed by COVID-19 waiver of exhaustion is
required, we are facing death/war against coronavirus as it is
spreading exponentially and silently from assumptomatic carrier's

the virus to others. Thus; this court has proper jurisdiction and pursuant to the coronavirus aid relief and economic security act, (home confinement authority (2) Your Honorable must not give the respondent's opposition much weigh and grant petitioner relief sought.

Respectfully submitted

William Figueroa


cc: Mattew Keller
    Assistant Attorney General
    28 Liberty Street
    New York, NY 10005

    File

William Figueroa-91-A-2142
Sullivan Correctional Facility
P.O. Box 166
Fallsburg, NY 12733

Dated: April 11, 2020

Honorable Paul G. Feinman
Judge of the Court of Appeals
Court of Appeal Hall
20 Eagle Street
Albany, New York 12207-1095

Re: People v. William Figueroa,
    Kings County Indictment
    Numbers 12706/89

Dear Judge Feinman:

Please Take Notice, herein; contrary to the respondent's erroneous affirmation in opposition, the defendant is entitled to a timely reargument motion. See People v. Ramos, 108 AD2d 209 (2d Dept 1985). As this Court has made plain that a defendant's inability to interview a potentially favorable witness because of the existing, was suppressed, constitutes a Brady violation where the information gathered, "if true, would have directly contradicted the People's theory of the case" (People v. Rong He, 34 NY3d 956 (2019).

In our motion, we explained that the People violated the requirements of Brady v. Maryland, 373 US 83 (1963), and People v. Vilardi, 76 NY2d 67 (1990),because they failed to disclose to a witness named Eddie Garcia, who reported to the police a conversation which he had with a man named Manuel Rivera. He told the police that Manuel Rivera told him that he was the person who committed the murder which is the subject of the within indictment. Mr. Garcia also provide to the police, in these two reports at issue, DD-5 numbered 160 and 202 of those in which the KCDA's deliberately withheld are documents in question back in August 15, 1989, which evidence that Manuel Rivera had reported to Eddie Garcia the same caliber .38 that was used in the shooting of Maria Hernandez and how he made his escape. (See Exhibit A).

A

ria Hernandez (Deceased)

Victim's Name - If Different

Name, First, M.I.: Garcia, EDDIE

Address, Include City, State, Zip: 1665 Grand Concourse Bronx

Apt. No.: 452

Telephone: none

Business Telephone: inmate 2418911591

Position / Relationship

Sex: M | Race: Hisp | Date of Birth: 7 19 63 | Age

No. of Perpetrators | Wanted | Arrested | Weapon: ☐ Used ☐ Possessed

Describe Weapon (If firearm, give color, make, caliber, type, model, etc.): NYSIIS /4572198Y

Arrested | Last Name, First, M.I. | Address, Include City, State, Zip | Apt. No. | Res. Pct.

Race | Date of Birth | Age | Height | Weight | Eye Color | Hair Color | Hair Length | Facial Hair | NYSID No.

Eyeglasses ☐ Sunglasses | Clothing Description

Nickname, First Name, Alias | Scars, Marks, M.O., Etc. (Continue in "Details")

Arrested | Last Name, First, M.I. | Address, Include City, State, Zip | Apt. No. | Res. Pct.

Race | Date of Birth | Age | Height | Weight | Eye Color | Hair Color | Hair Length | Facial Hair | NYSID No.

Eyeglasses ☐ Sunglasses | Clothing Description

Nickname, First Name, Alias | Scars, Marks, M.O., Etc. (Continue in "Details")

THIS BOX FOR DETECTIVE / LATENT FINGERPRINT OFFICER ONLY: THIS BOX WILL BE UTILIZED BY INVESTIGATOR WHENEVER AND MUST BE FULLY COMPLETED WHEN USING THIS FORM TO CLOSE A CASE "NO RESULTS."

☐ No | In Person ☐ | By Phone ☐ | Date | Time | Results Same as Comp. Report - Different (Explain in Details) ☐ ☐

Viewed ☐ No | In Person ☐ | By Phone ☐ | Date | Time | Results Same as Comp. Report - Different (Explain in Details) ☐ ☐

☐ No | If Yes - Make Entry in Body Re. Time, Date, Names, Addresses, Results | Crime Scene Visited ☐ Yes ☐ No | If Yes - Make Entry in Details Re. Time, Date, Evidence Obtained

Photos ☐ Refused ☐ Future | Results

Photos ☐ Refused ☐ Future | Results

☐ No | By (Enter Results in Details) | Crime Scene Photos ☐ Yes ☐ No | By (Enter Results in Details)

Case "No Results," Check Appropriate Box and State Justification in Details: ☐ C-1 Improper Referral ☐ C-2 Inaccurate Facts ☐ C-3 No Evidence / Can't ID ☐ C-4 Uncooperative Complainant

tigation: Homicide

ct: Interview Of Eddie Garcia [redacted]

n 8/15/89 at 1000hrs PO Rosario, 83Pct Comm Relations, translated for Eddie Garcia n inmate in [redacted] who called the 83BQD, and stated the following. n 8/13/89 at 1130hrs he called telephone / 821-8281 looking to speak to his friend anuel Rivera and in speaking to Rivera Rivera stated that he was scared and was ooking to go to Puerto Rico because he killed Maria Hernandez. Rivera stated to arcia that he was paid $1,000 by Julio Enrique Martinez and that he used a .38 gun arcia stated that Martinez is a drug dealer and his brand name is STARR and that oth Rivera and Martinez stay in Bushwick Park."

anuel Rivera, M/Hisp Puerto Rican 28yrs 5'7 160lbs Aka INDIO

ulio Enrique Martinez, M/H Puerto Rican, 32yrs 5'9 med build, dirty blond hair, full eard, aka CANO.

ddie Garcia being held on $3,500 bail for drug sale.

I check on Garcia

25/89 41Pct Drugs

17/89 40Pct Drugs

20/86 41Pct Drugs

/14/86 40Pct Burglary

12/84 40Pct CPSP

5/80 52Pct Grand Larceny

die. garcia is also known as Alex Garcia, Juis Garcia Jose Garcia, Jose Saldana. be active.

Rank, Signature, Command: [signature] 83SQD | Name Printed: Det O'Keeffe | Tax Registry No.: 863961 | Supervisor's Signature: [signature] | C.O.'s Initials

UNIT REFERRED TO

2194 | 83SQD | 202

Victim's Name - Last, First, M.I.: Maria Hernandez (Deceased)

Victim's Name - If Different:

Name, First, M.I.: Garcia, Eddie

Address, Include City, State, Zip: 1665 Grand Concourse Bronx | Apt. No. 52

Home Telephone: NYSIIS #45721984 | Business Telephone: Inmate # 2414911591

Position / Relationship: | Sex: M | Race: H | Date of Birth: 7 19 63 | Age:

Total No. of Perpetrators: | Wanted | Arrested | Weapon: ☐ Used ☐ Possessed | Describe Weapon (If firearm, give color, make, calibre, type, model etc.)

Wanted | Arrested | Last Name, First, M.I. | Address, Include City, State, Zip | Apt No | Res Pct

Sex | Race | Date of Birth | Age | Height ft in | Weight | Eye Color | Hair Color | Hair Length | Facial Hair | NYSID No

☐ Eyeglasses ☐ Sunglasses | Clothing Description

Nickname, First Name, Alias | Scars, Marks, M.O., Etc. (Continue in "Details"):

Wanted | Arrested | Last Name, First, M.I. | Address, Include City, State, Zip | Apt No | Res Pct

Sex | Race | Date of Birth | Age | Height ft in | Weight | Eye Color | Hair Color | Hair Length | Facial Hair | NYSID No

☐ Eyeglasses ☐ Sunglasses | Clothing Description

Nickname, First Name, Alias | Scars, Marks, M.O., Etc. (Continue in "Details"):

WITHIN BOX FOR DETECTIVE / LATENT FINGERPRINT OFFICER ONLY. THIS BOX WILL BE UTILIZED BY INVESTIGATOR WHENEVER POSSIBLE AND MUST BE FULLY COMPLETED WHEN USING THIS FORM TO CLOSE A CASE "NO RESULTS."

Comp Interviewed: ☐ Yes ☐ No | In Person ☐ | By Phone ☐ | Date | Time | Results: Same as Comp Report ☐ - Different (Explain in Details) ☐

Witness Interviewed: ☐ Yes ☐ No | In Person ☐ | By Phone ☐ | Date | Time | Results: Same as Comp. Report ☐ - Different (Explain in Details) ☐

Canvass Conducted: ☐ Yes ☐ No | If Yes - Make Entry in Body Re: Time, Date, Names, Addresses, Results | Crime Scene Visited ☐ Yes ☐ No | If Yes - Make Entry in Details Re: Time, Date, Evidence Obtained

Complainant Viewed Photos: ☐ Yes ☐ Refused ☐ Future | Results:

Witness Viewed Photos: ☐ Yes ☐ Refused ☐ Future | Results:

Crime Scene Dusted: ☐ Yes ☐ No | By (Enter Results in Details) | Crime Scene Photos ☑ Yes ☐ No | By (Enter Results in Details)

If Closing Case "No Results," Check Appropriate Box and State Justification in Details: ☐ C-1 Improper Referral ☐ C-2 Inaccurate Facts ☐ C-3 No Evidence/Can't ID ☐ C-4 Uncooperative Complainant

Details

Investigation: Homicide
Subject: Reinterview Of Eddie Garcia.

On 8/17/89m at 2200hrs the reported accompanied by Det Martinex,83 83SQD,visited named person at Bronx House Of Detention. Person interviewed had been interviewed by phone on 8/14/89 by the reporter ~~KX~~ se DD 5 #160.
Mr Garcia stated he had a second phone conversation with a male Hisp named Manuel Rivera on 8/16/89 in which Rivera stated for the second time he had killed Maria Hernandez. Garcia stated he was told by Rivera that Rivera was paid $1,000 by Julio Enrique Martinez to shoot either Marie Harnendez or her husband Carlos. Rivera once again stated he was given a .38 gun by Martinez to do the shooting. Garcia states he was told by Rivera that Rivera walked onto the block and was wearing a mask and saw that lights were on in the Hernandez home and he could see some one was walking around inside,firing five shots. Mr Garcia states he is going to call Manuel Rivera on 8/18/89 and will contact Det Martinez on that date with more information.
Mr Garcia was shown photos by the reporter and Identified photos of HARRY SANTIAGO and DOEL SANTIAGO. He stated he has known them for many years and they come from his home town in Salinas Puerto Rico. He knows the family to live at Urbanization Brisa del Mar(Winds of The OCean) complex.
Garcia states that the Santiago brothers know Julio Enrique and that about 4 months ago they had an arguement over drug spots. Garcia also stated he ~~XXXXX~~ does not think the SANTIAGO brothers know Manuel Rivera.
Garcia stated that Martinez put out contract on the Hernandez;s because they pushed the dealers off the block. Garcia also stated that Martinez lives in area of 83Pct,can show the house,and that Rivera is staying with him. He also states there is numerous guns in Martinez;s house.
case active.

Reporting Officer's Rank - Signature - Command: [signature] 83SQD | Name Printed: Det O'Keeffe | Tax Registry No.: 863961 | Supervisor's Signature: [signature] | C.O.'s Initials

Choice 1 | Choice 2 | Perp 1 | Perp 2 | Perp 1 | Perp 2

SULLIVAN CORRECTIONAL FACILITY
P.O. BOX 116
FALLSBURG, NEW YORK 12733-0116

NAME: William Figueroa DIN: 91-A-

Legal Mail

SULLIVAN
CORRECTIONAL FACILITY

NEOPOST
05/29/2020
US POSTAGE $000.15
ZIP 12733
041M11286636

FOREVER USA PURPLE HEART

Postage due .15¢

USMP3
SDNY

To: Hon. John G. Koeltl
United States District Judge
Daniel Patrick Mynihan United States CH
Southern District of New York
500 Pearl Street
New York, NY 10007

10007-133099